In re Tracy Ann RIDDER, Debtor.

Tracy Ann RIDDER, Plaintiff,

v.

GREAT LAKES HIGHER EDUCATION CORPORATION, Defendant.

Bankruptcy No. LM13–91–00850.
Adv. No. 93–2442–13.

United States Bankruptcy Court,
W.D. Wisconsin.

Aug. 12, 1994.

Melvyn L. Hoffman, Hoffman, Addis & Brandau, La Crosse, WI, for debtor/plaintiff.

Lloyd J. Blaney, Madison, WI, for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

The Plaintiff, Tracy Ann Ridder ("Ridder"), filed a Chapter 13 bankruptcy and received a discharge on June 30, 1993.

Thereafter, Defendant, Great Lakes Higher Education Corp. ("Great Lakes"), a holder of a nondischargeable student loan debt, threatened a state court action to collect postpetition interest on the debt.

Ridder did not attempt to have the Great Lakes debt discharged.[1] Instead, Ridder's plan included Great Lakes with all of the other unsecured debts, which were to be paid without interest. From the payments proposed and made, each unsecured creditor ultimately received approximately 41% of its claim.[2] While Ridder was in bankruptcy, Great Lakes did not make any claim for postpetition interest nor did it make any objection to its treatment under the plan.

Ridder made all plan payments and received a discharge. Great Lakes received $4,917.59 in distributions leaving a balance of $7,556.12 remaining on its bankruptcy claim. Believing that balance to be the total amount owed, Ridder tendered $7,556.12 to Great Lakes in full payment. However, Great Lakes demanded that Ridder also pay at least $2,185.66 in interest that accrued after her filing.[3] To determine if she remains personally liable for this postpetition interest, Ridder moved to reopen this case.

1. Ridder filed no adversary proceeding to determine the debtor discharged under § 523(a)(8) which provides:

    (a) A discharge under section 727, 1141, 1228[a], 1228[b], or 1328(b) of this title does not discharge an individual debtor from any debt—
    (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—
    (A) such loan, benefit, scholarship, or stipend overpayment first became due before more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
    (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

2. The plan provided:

    (c) Dividends to secured creditors, dividends to unsecured creditors whose claims are duly allowed as follows: Payments to be on a pro-rata basis without interest.

Although claims for postpetition interest are disallowed during bankruptcy, after bankruptcy the holder of a nondischargeable debt may collect from the debtor personally. *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). Student loans are nondischargeable in a Chapter 13 bankruptcy. 11 U.S.C. § 1328(a)(2) (1994).[4] Because the debt was not discharged, Great Lakes may collect the postpetition interest from Ridder personally.

## Discussion

The amount of an unsecured claim is fixed at the time of filing. "The amount of the claim will be for principal and unpaid interest accrued as of that date." Robert E. Ginsberg & Robert D. Martin, *Bankruptcy: Text, Statutes & Rules*, § 10.08, Prentice Hall, 3rd Ed., (1993). The Bankruptcy Code expressly disallows claims for unmatured interest.[5] *In re Hanna*, 872 F.2d 829, 830 (8th Cir.1989). "[S]ection 502(b)(2) specifies that unmatured interest ... is not to be allowed against the bankruptcy estate." The rule disallowing claims for unmatured interest would include debts excepted from discharge.

3. For the period between March 15, 1991 and September 4, 1992, Great Lakes did not accrue interest on Ridder's account. But from October 8, 1992 through May 7, 1993, payments were allocated to both principal and interest.

4. Section 1328(a)(2) provides:

    (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt ...
    (2) of the kind specified in paragraph (5), (8) [student loans], or (9) of section 523(a) of this title

5. Section 502(b)(2) provides:

    Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection is made, the court, after notice and hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that ...
    (2) such claim is for unmatured interest.

Thus, while Great Lakes may have had a claim for unmatured interest, or a claim for interest that would be earned during the pending bankruptcy, it would have been disallowed.[6]

The fact that Great Lakes' claim for postpetition interest would have been disallowed has nothing to do with whether postpetition interest is dischargeable. *In re Shelbayah,* 165 B.R. 332, 335 (Bankr.N.D.Ga.1994). "Almost all courts that have considered the issue presented have concluded that the disallowance of postpetition interest has no effect on the dischargeability of a claim for, and an individual's future liability for, such interest." *Id.; see also Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964); *In re Hanna,* 872 F.2d 829 (8th Cir.1989). Interest is an integral part of a continuing debt. *Bruning,* 376 U.S. at 362–63, 84 S.Ct. at 908–09. It provides an incentive for the borrower to promptly repay. It represents the borrowers cost of use of the money. Because Ridder's student loan was not discharged, the debt was continuing. Postpetition interest is an integral part of the undischarged debt and would itself be nondischargeable.

In *Bruning,* 376 U.S. at 362–63, 84 S.Ct. at 908–09, the court stated, "logic and reason indicate that postpetition interest on a tax claim excepted from discharge by § 17 of the Act should be recoverable in a later action against the debtor." *Id.* at 362–63, 84 S.Ct. at 908–09. The court went on to note that "there is no evidence of any congressional intent to the contrary." *Id.* The logic behind disallowing unmatured interest during the pendency of the bankruptcy case is related to administrative and equity concerns. *Id.; see also In re Hanna,* 872 F.2d at 830.

Those concerns are no longer present after the case is closed.[7]

*Bruning* is not limited to nondischargeable tax debt. In *In re Jordan,* 146 B.R. 31, 32 (D.Colo.1992), a court faced with that argument held that *Bruning* is not concerned with the type of nondischargeable debt, but with the fact that the debt is nondischargeable. The court held that the rule in *Bruning* applies with equal force to student loan debts.

In *In re Wasson,* 152 B.R. 639, 642 (Bankr. D.N.M.1993), the court held that when a student loan is fully paid through the plan, the postpetition interest on the student loan is discharged. In *Wasson,* a student loan creditor objected to debtor's Chapter 13 plan because it did not provide for postpetition interest. The court denied the objection to the plan because 11 U.S.C. § 502(b)(2) expressly provided that postpetition interest would be disallowed. In reaching its decision, the court limited the holding of *Bruning* by determining that it only applied to situations where the nondischargeable debt survived the bankruptcy. Under the *Wasson* rule, postpetition interest on student loans may be discharged when the allowed claim is paid in full. This is not the situation in our case, nor a result which is here endorsed.

Ridder argues that even if Great Lakes had a claim for unmatured interest, it waived any right to receive it by failing to object to confirmation of the plan which clearly provided for Great Lakes to be paid without interest. *See* 11 U.S.C. § 1327(a) (1994)[8]; *see also Matter of Gregory,* 705 F.2d 1118, 1121 (9th Cir.1983). Ridder's argument appears to be based upon the Seventh Circuit's decision in *Matter of Chappel,* 984 F.2d 775 (7th Cir.1993). In *Chappel,* the

---

**6.** In some situations, an unsecured creditor's claim for post petition interest may be allowed. "An unsecured creditor or partially secured creditor would be entitled to a claim for post petition interest only if all creditors of every priority were paid in full and assets still remained available for distribution." Robert E. Ginsberg & Robert D. Martin, *Bankruptcy: Text, Statutes & Rules,* § 10.08, Prentice Hall, 3rd Ed. (1993).

**7.** The rule disallowing unmatured interest is a rule of administrative convenience and equity. *In re Hanna,* 872 F.2d at 830. Because of the

rule, claims may be calculated easily and lower priority creditors are not prejudiced by delays inherent in the liquidation and distribution of the estate. *Id.*

**8.** Section 1327(a) provides:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

court held that an oversecured creditor entitled to receive postpetition interest, had waived its right to receive such interest. Neither before nor while the plan was pending did the creditor make any claim for postpetition interest. After the case had been closed and the debtor had been discharged, the creditor claimed that the debtor still owed for interest accruing postpetition. When the creditor commenced foreclosure proceedings, the court held that it had waived the right to postpetition interest and could not collect it from the debtor personally. As the plan had been confirmed without the creditor's objecting and no claim for interest was made, the creditor was bound by the terms of the plan.

Debtor's reliance on *Chappel* is misplaced. The creditor in *Chappel* had a reason to object. It could have included postpetition interest in an allowed secured claim. Under 11 U.S.C. § 506(b), the holder of an oversecured claim may recover interest and fees in addition to the prepetition amount of the claim. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239–40, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989). Debtor's discharge extended to the entire claim which could have been allowed.[9] Great Lakes, on the other hand, was not entitled to postpetition interest under the plan, therefore it had no reason to object to Ridder's plan.

■ Great Lakes, as a holder of a student loan, has been given special protections from Congress.[10] Its debt survives bankruptcy whatever its treatment under the Chapter 13 plan (except if the treatment were full payment with interest).[11] The plan provided that no interest would be paid to Great Lakes and Great Lakes had no legal basis to demand payment through the plan. 11 U.S.C. § 502(b)(2); *In re Hanna*, 872 F.2d at 830. Any attempt by Great Lakes to object to confirmation would have been frivolous.

For the reasons set out in this memorandum decision, the debtor's motion to reopen and the relief sought thereby are denied. It may be so ordered.

## ORDER

The court having this day entered its Memorandum Decision in the above-entitled matter;

IT IS HEREBY ORDERED that Great Lakes Higher Education Corporation, as holder of a nondischargeable claim pursuant to 11 U.S.C. § 523(a)(8), is entitled to postpetition interest on said claim.

**9.** Section 1328(a) of the Bankruptcy Code provides:

> As soon as practicable after completion by the debtor of all payments under the plan, ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title.

Ridder did not argue that since Great Lakes' claim would have been disallowed under section 502, that the debt would be discharged pursuant to section 1328(a). However, Great Lakes filed no claim and its claim was not disallowed. Even if a claim was filed, it would be unlikely that the interest would have been discharged. *In re Shelbayah*, 165 B.R. 332, 335 (Bankr.N.D.Ga.1994).

**10.** Student loan debts are nondischargeable and self proving. *See* 11 U.S.C. § 523(a)(8); 11 U.S.C. § 1328(a)(2); S.Rep. No. 95–989, 95th Cong.2d Sess. 77–79 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787. Specifically, the Senate Report provides:

> This provision [11 U.S.C. § 523(a)(8)] is intended to be self executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan.

S.Rep. No. 95–989, 95th Cong.2d Sess. 77–79, U.S.Code Cong. & Admin.News 1978, p. 5865; *see also Matter of Johnson*, 17 B.R. 95, 98 (Bankr.W.D.Mo.1981) (holding the legislative history behind § 523(a)(8) suggests that it is self executing).

**11.** Great Lakes had no power to compel such treatment in the plan. Unless the debtor was shown to have the capacity to pay *all* debts in full with contract interest, Great Lakes could compel no better treatment than other unsecured creditors could compel by virtue of the "best interest" and "best efforts" tests. *See* 11 U.S.C. § 1325(a)(4); 11 U.S.C. § 1325(b).